**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
In re:                                                                                    **FOR PUBLICATION**

MARIA AIOLOVA,                                                              Chapter 7

        Debtor.                                                              Case No. 11-10503 (BRL)

------------------------------------------------------------------X
CLIFFORD JACKMAN,

        Plaintiff,
  v.                                                                                        Adv. Pro. No. 12-02073 (BRL)

ANGELA TESE-MILNER, as Chapter 7 Trustee
for the estate of Maria Aiolova, and JPMORGAN
CHASE BANK, N.A., as purchaser of substantially
all of the assets of Washington Mutual Bank and as
successor by merger to Chase Home Finance, LLC,

        Defendants.
------------------------------------------------------------------X

APPEARANCES:

THE LAW FIRM OF TESE & MILNER
One Minetta Lane
New York, New York 10012
Telephone:    (212) 475-3673
Facsimile:    (212) 598-5844
By:    Angela Tese-Milner

*Attorneys for the Chapter 7 Trustee, Angela Tese-Milner*

TEITELBAUM & BASKIN, LLP
One Barker Avenue, 3rd Floor
White Plains, New York 10601
Telephone:    (914) 437-7670
Facsimile:    (914) 437-7672
By:    Jay Teitelbaum
       Dana Montone

*Attorneys for JPMorgan Chase Bank, N.A., purchaser of assets of Washington Mutual Bank from the FDIC as receiver for Washington Mutual Bank, and as successor by merger to Chase Home Finance, LLC, as servicer and creditor*

PICK & ZABICKI LLP
369 Lexington Avenue, 12th Floor
New York, New York 10017
Telephone:     (212) 695-6000
Facsimile:      (212) 695-6007
By:     Douglas J. Pick

*Attorneys for Clifford Jackman*

Before: Hon. Burton R. Lifland
             United States Bankruptcy Judge

### MEMORANDUM DECISION AND ORDER (I) GRANTING TRUSTEE'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO BANKRUPTCY RULE 7056 AND (II) DENYING THE REQUEST OF THE TRUSTEE AND CHASE FOR SANCTIONS AGAINST JACKMAN

Before the Court is the motion for summary judgment (the "Motion") pursuant to Federal Rule of Civil Procedure ("Rule") 56(c), made applicable herein by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7056, of Angela Tese-Milner (the "Trustee"), co-defendant in the above-captioned adversary proceeding and Chapter 7 trustee for the estate of Maria Aiolova (the "Debtor" or "Aiolova"), requesting that the Court grant summary judgment and declare that Clifford Jackman ("Jackman"), the above-captioned plaintiff, has no legal or equitable interest in the property located at 1565 Sag Harbor Bridgehampton Highway, Sag Harbor, New York (the "Property"). Aiolova and Jackman were, at one time, prepetition business associates who were romantically involved. It would appear that those relationships have been extinguished. In addition, in their reply briefs, the Trustee and JPMorgan Chase Bank, N.A. ("Chase"), the other co-defendant in the above-captioned adversary proceeding, request that sanctions be imposed against Jackman.

More than a year ago, this Court entered an uncontested order authorizing the sale of the Property. The implementation of that order, however, has been delayed inordinately due to litigation brought by Jackman that has rendered a chill for potential purchasers of the Property.

2

Specifically, Jackman filed a complaint seeking a declaration that he is the rightful owner of the Property and requesting the imposition of a constructive trust over the Property for his benefit. Although Jackman admits that he deeded the Property to Aiolova prepetition for $675,000, he argues that he retains an equitable interest in the Property because Aiolova secretly promised to reconvey the Property back to him. Jackman's own actions, however, before this Court and other tribunals, have repudiated the central allegations in the complaint. Not only has Jackman twice tried to purchase the Property in which he claims to have an equitable interest, once from Aiolova and once from the Trustee, he has also testified in a state court action that he never requested that the Property be reconveyed to him.

Putting aside Jackman's inconsistent arguments, drawing all reasonable inferences and resolving all ambiguities in Jackman's favor, as a court must do in a motion for summary judgment, the Court still finds that the Trustee is entitled to summary judgment as a matter of law. Jackman had a full and fair opportunity to object to the sale authorization order, but chose not to. As such, *res judicata* prevents Jackman from avoiding the effects of that order by now asserting an ownership interest in the Property in the instant proceeding. Further, the Trustee's status under section 544(a)(3) of the Bankruptcy Code, as a bona fide purchaser of real property for value, defeats any secret interests Jackman may have in the Property. Accordingly, the Motion for summary judgment is GRANTED, and Jackman's Amended Complaint is DISMISSED in its entirety with prejudice. In addition, the request of the Trustee and Chase for the imposition of sanctions against Jackman is DENIED without prejudice.

## BACKGROUND

The essential facts, largely set forth in the pleadings and filed papers, are as follows.

**The Debtor's Bankruptcy**

On February 9, 2011, Aiolova filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code. She asserted a fee simple interest in the Property in her schedules. *See* Petition (Case No. 11-10503, Dkt. No. 1), Schedule A.

On June 9, 2011, the Debtor moved to convert the case to Chapter 13, which was subsequently denied by the Court. *See* Case No. 11-10503, Dkt. Nos. 25, 35. Jackman objected to the motion to convert and argued that, although there was no formal agreement between himself and the Debtor, there was a mutual understanding that the net sale proceeds of the Property would be shared. *See* Conversion Objection (Case No. 11-10503, Dkt. No. 31), ¶ 2. He did not allege, however, that the Debtor had promised to reconvey the Property to him. In fact, in a decision (the "State Court Decision") from the Supreme Court of the State of New York, New York County,[1] which Jackman attached as an exhibit to his objection, Jackman testified that "*he had never asked [the Debtor] to transfer title to the [P]roperty back to him.*" *See* Conversion Objection, Ex. B, p. 2 (emphasis added). Significantly, around the time of the 2007 Lawsuit, Jackman entered into a contract with a nominee of Aiolova to purchase the Property back from her for $630,000. *See* Trustee Motion (Adv. Pro. No. 12-02073, Dkt. No. 25), Ex. A; Jackman Aff. (Adv. Pro. No. 12-02073, Dkt. No. 32), ¶ 29. Jackman never tendered the purchase price and the sale was never consummated. *See* Trustee Motion, ¶ 9; Jackman Aff., ¶ 30.

---

[1] The State Court Decision concerned a 2007 lawsuit (the "2007 Lawsuit") brought by a party allegedly injured on the Property against Aiolova and Jackman as joint owners thereof. The State Court Decision denied a motion by Aiolova for summary judgment, and noted inconsistencies between the claims of Jackman and Aiolova regarding ownership of the Property. *See* Conversion Objection, Ex. B, p. 2. (Adv. Pro. No. 12-02073, Dkt. No. 32), Ex. 9.

4

On June 27, 2011, Jackman filed a proof of claim (the "Proof of Claim") against the Debtor, asserting a claim of $434,907.00 on account of mortgage payments and other expenses made in connection with the Property. *See* Am. Compl.,[2] ¶ 41. The Proof of Claim does not allege any legal or equitable interest in the Property.

On November 18, 2011, the Trustee filed a motion to sell the Property free and clear of all liens, claims and encumbrances. *See* Sale Motion (Case No. 11-10503, Dkt. No. 51). Chase, as the holder of the first mortgage obligations secured by the Property, objected to the proposed sale. *See* Chase Objections (Case No. 11-10503, Dkt. Nos. 55, 69). On notice to all creditors and parties in interest, the Court so ordered a stipulation (the "Sale Authorization Order") consensually resolving the dispute between the Trustee and Chase. *See* Case No. 11-10503, Dkt. Nos. 79, 84. The Sale Authorization Order, *inter alia*, authorized the Trustee to sell the Property free and clear of all liens, claims, and encumbrances, other than those of Chase, and determined that the amount due to Chase under the loan and secured by the Mortgage was $724,731.43. *Id.* at ¶¶ 5–6. The Sale Authorization Order also noted that an offer by Jackman to purchase the Property from the Trustee (the "Jackman Offer") had been rejected as insufficient. *See* Sale Authorization Order, p. 2; *see also* Jackman Aff., ¶ 26; Trustee Motion, ¶ 9. Jackman did not object to the Sale Motion or the Sale Authorization Order.

One week after this Court entered the Sale Authorization Order, the Trustee moved, by order to show cause, for an order, subsequently granted by this Court, directing Jackman to immediately remove his personal items and vacate the Property. *See* Case No. 11-10503, Dkt. Nos. 85, 93. The Trustee argued that the Property did not have a certificate of occupancy and

---

[2] Amended Complaint against Angela Tese-Milner, as Chapter 7 Trustee of the Estate of Maria Aiolova, JPMorgan Chase Bank, N.A., as purchaser of substantially all of the assets of Washington Mutual Bank from the FDIC as receiver for Washington Mutual Bank and as successor by merger to Chase Home Finance, LLC [hereinafter "Am. Compl."] (Adv. Pro. No. 12-02073, Dkt. No. 9).

5

that Jackman's presence could chill the marketing and sale of the Property. *See* Case No. 11-10503, Dkt. No. 85, at ¶ 7. In an objection, Jackman argued that the Debtor and Jackman had an understanding that they jointly owned the Property, even though title had passed from Jackman to Debtor. *See* Vacatur of Property Opp. (Case No. 11-10503, Dkt. No. 88), ¶¶ 4–5. Once again, Jackman did not allege that the Debtor had promised to reconvey the Property. *See id.*

**The Instant Adversary Proceeding**

More than five months after entry of the Sale Authorization Order and rejection of the Jackman Offer, Jackman filed a complaint on December 21, 2012, initiating the instant adversary proceeding against the Trustee, in her capacity as Chapter 7 Trustee of the Debtor's estate. *See* Adv. Pro. No. 12-02073, Dkt. No. 1. Therein, for the first time, Jackman alleges that the Debtor promised to reconvey the Property to him. *See id.* at ¶¶ 22, 23. Jackman amended the complaint on February 14, 2013, solely to add Chase, the mortgagee of the Property, as a defendant. *See* Am. Compl.

According to the Amended Complaint, Jackman purchased the Property in 2000 for $225,000. *See* Am. Compl., ¶ 11. Jackman and Aiolova began a personal relationship in June of 2001. *See* Am. Compl., ¶ 12. A year later, the Amended Complaint alleges, they began living together on the Property with the intention of ultimately using the Property as their marital residence.[3] *See* Am. Compl., ¶ 16. Beginning in May 2004, Jackman, who constructed and improved residential properties, and Aiolova, an architect and home designer, jointly invested in the acquisition and development of residential properties. *See* Am. Compl., ¶¶ 13–15. In furtherance of their joint investments, Jackman and Aiolova agreed that Aiolova would purchase

---

[3] It should be noted that this allegation is inconsistent with Jackman's previous deposition testimony, in the 2007 Lawsuit, in which he asserted that he and Aiolova "were never formally engaged, had never set a wedding date, and had never previously lived together" and he could not recall when they had agreed to separate. *See* Conversion Objection, Ex. B, p. 2.

6

the Property from Jackman and obtain mortgage financing from a bank in order to acquire and develop other properties. *See* Am. Compl., ¶ 23. Pursuant to a deed dated October 7, 2004 (the "Deed"), and in consideration for $675,000, Jackman conveyed the Property to Aiolova (the "2004 Sale").[4] *See* Am. Compl., ¶ 25. The Deed granted Aiolova:

> [a]ll that certain plot, piece or parcel of land, with the buildings and improvements thereon erected. Together with the appurtenances and all the estate and rights of [Jackman] in and to said premises; To have and hold the premises herein granted unto [the Debtor], the heirs or successors and assigns of [the Debtor] forever.

*See* Chase Summary Judgment Statement, Ex. A. The Deed was recorded in the Suffolk County land records on October 19, 2004 at Liber D00012349, p. 734. *See id.* The Deed made no mention of any promise by Aiolova to reconvey the Property to Jackman, nor was there a contract of sale accompanying the transfer of the Deed. Nevertheless, Jackman alleges that it was always understood and agreed between Aiolova and him that, at some future date, she would reconvey the Property, and that, in the interim, Aiolova "would only hold 'bare legal title' to the [Property] for the benefit of Jackman as the equitable owner thereof." *See* Am. Compl., ¶24.

On February 17, 2006, Aiolova executed a promissory note in favor of Washington Mutual Bank, F.A. in the principal amount of $600,000 (the "Note"). *See* Sale Authorization Order, p. 1. The Note was secured by a mortgage (the "Mortgage") on the Property, recorded in the Suffolk County Clerk's office on June 7, 2006 as Liber M00021313, p. 427. *See id.* Chase is the current owner and holder of the Note and Mortgage. *Id.*; *see also* Am. Compl., ¶ 45. Subsequent to the 2004 Sale, Jackman claims to have paid the mortgage, tax, utility and other ongoing obligations of the Property (collectively, the "Ongoing Obligations"). *See* Am. Compl., ¶ 31.

---

[4] The Deed is attached as exhibit A to Chase's Summary Judgment Statement. *See* Chase Summary Judgment Statement (Adv. Pro. No. 12-02073, Dkt. No. 28), Ex. A.

7

In November 2006, the personal relationship between Jackman and Aiolova ended. *See* Am. Compl., ¶ 35; Jackman Aff., ¶ 19. Shortly thereafter, Aiolova vacated the Property, while Jackman remained and claims to have continued paying the Ongoing Obligations. *See* Am. Compl., ¶ 35. In 2007, Jackman allegedly paid Aiolova $45,000 for reimbursement of her expenditures on the Property. *See* Jackman Aff., ¶ 19.

Given that Jackman alleges that the Debtor promised to reconvey the property to him, Jackman argues that the Debtor merely held legal title to the Property in trust for Jackman's benefit and the Property is therefore not property of the Chapter 7 estate. *See* Am. Compl., ¶¶ 48–51. Accordingly, in the Amended Complaint, Jackman seeks a declaration that he is the rightful owner of the Property and the imposition a constructive trust over the Property for his benefit. *See* Am. Compl., ¶¶ 52, 58.

**The Motion for Summary Judgment**

The Trustee filed the instant Motion on June 7, 2013. *See* Trustee Motion (Adv. Pro. No. 12-02073, Dkt. No. 33). Chase filed the Chase Summary Judgment Statement in support of the Motion on June 24, 2013. On July 15, 2013, Jackman filed his opposition to the Motion, *see* Jackman Opp. (Adv. Pro. No. 12-02073, Dkt. No. 33), which included the Jackman Affidavit. The Trustee and Chase replied on July 22, 2013. *See* Trustee Reply (Adv. Pro. No. 12-02073, Dkt. No. 35); Chase Reply (Adv. Pro. No. 12-02073, Dkt. No. 36). A hearing on the instant matter was held on July 31, 2013.

## STANDARD FOR SUMMARY JUDGMENT

Rule 56 provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact." FED. R. CIV. P. 56(a); FED. R. BANKR. P. 7056. The court's role in ruling on a summary judgment motion "is not to resolve disputed issues of

8

fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Robinson v. Sanctuary Record Grps., Ltd.*, No. 03-CIV-10235, 2011 WL 5282680, at *2 (S.D.N.Y. Nov. 2, 2011) (quoting *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir. 1986)). The moving party bears the initial burden of showing that the undisputed facts entitle it to judgment as a matter of law. *See Rodriguez v. City of New York*, 72 F.3d 1051, 1060–61 (2d Cir. 1995). If the movant carries this initial burden, "[t]he non-moving party may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial." *Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

## DISCUSSION

In opposing summary judgment, Jackman principally argues that summary judgment is not appropriate because questions of fact remain regarding the elements of a constructive trust under New York law. Even assuming *arguendo* that Jackman is correct and there are outstanding questions of fact regarding constructive trust, the Trustee is nevertheless entitled to summary judgment. First, *res judicata* bars Jackman from raising arguments that could and should have been raised at the time of the Sale Authorization Order. Second, section 544(a)(3) of the Bankruptcy Code ("Section 544(a)(3)") protects the Trustee from any unrecorded interest Jackman may have in the Property.

### I.   RES JUDICATA BARS JACKMAN FROM ASSERTING AN OWNERSHIP INTEREST IN THE PROPERTY

*Res judicacta* bars parties from relitigating issues that were or could have been raised in prior actions. *See Proctor v. LeClaire*, 715 F.3d 402, 411 (2d Cir. 2013). It protects against "the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters

9

reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153–54 (1979). As the Second Circuit has held, "[t]hese virtues have no less value in the bankruptcy context; this is particularly true in a Chapter 7 liquidation where it is desirable that matters be resolved as expeditiously and economically as possible." *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007).

*Res judicata* may be properly applied only if certain prerequisites are met. Specifically, *res judicata* bars litigation if an earlier decision was "(1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *Id.* Here, as discussed below, all four elements have been satisfied. Accordingly, even assuming that the Debtor promised to reconvey the Property, the *res judicata* effect of the Sale Authorization Order precludes Jackman from now asserting any interest in the Property in the current proceeding.

*(a)* ***The Sale Authorization Order Constituted a Final Judgment on the Merits by a Court of Competent Jurisdiction***

The first two elements of *res judicata* have been met because the Sale Authorization Order was a final judgment on the merits and was issued by a court of competent jurisdiction. First, it is uncontested that the Sale Authorization Order constituted a final judgment on the merits. *See Bank of Lafayette v. Baudoin (In re Baudoin)*, 981 F.2d 736, 742 (5th Cir. 1993) ("[B]ankruptcy court orders authorizing the sale of part of the estate or confirming such sale are final judgments on the merits for res judicata purposes, even though the order neither closes the bankruptcy case nor disposes of any claim.") (quotation and citation omitted); *Gazes v. DelPrete (In re Clinton Street Food Corp.)*, 254 B.R. 523, 530 (Bankr. S.D.N.Y. 2000) ("A bankruptcy court order approving a sale of assets is a final order for *res judicata* purposes."); *see also Lawrence v. Wink (In re Lawrence)*, 293 F.3d 615, 621 (2d Cir. 2002) (emphasizing importance

10

of *res judicata* in preventing "future litigation attacking the final orders of sale in a bankruptcy court proceeding, a forum where finality of court orders is particularly important"). Second, a bankruptcy court has the jurisdiction to entertain and enter orders authorizing the sale of estate assets and therefore qualifies as a court of competent jurisdiction. *See* 11 U.S.C. § 363; *see also EDP Med. Computer Sys.*, 480 F.3d at 624 (explaining that *res judicata* "applies with full force to matters decided by the bankruptcy courts").

*(b)    The Same Parties are Involved in Both the Instant Adversary Proceeding and the Sale Authorization Order*

The third element of *res judicata* has also been satisfied, as both Jackman and the Trustee are parties in the instant proceeding and were parties to the adjudication of the Sale Motion as well. In the bankruptcy context, all creditors of a debtor have the opportunity to be heard in proceedings within that debtor's case. As such, for *res judicata* purposes, a creditor is a party in interest to orders entered in the administration of the bankruptcy proceeding, even if the creditor fails to object or participate in a matter. *See Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1550–51 (11th Cir. 1990) ("A party, for the purposes of former adjudication, includes all who are directly interested in the subject matter and who have a right to make defense, control the proceedings, examine and cross-examine witnesses and appeal from the judgment if an appeal lies.") (citation and quotations omitted); *HSBC Bank USA, N.A. v. Adelphia Commc'ns Corp.*, No. 07–CV–553A, 2009 WL 385474, at *11 (W.D.N.Y. Feb. 12, 2009); *see also Christo v. Padgett*, 223 F.3d 1324, 1339 (11th Cir. 2000) (order approving a settlement is a final order and is afforded *res judicata* effect to all creditors who were noticed and had an opportunity to object); *In re Borders Group, Inc.*, No. 11-10614, 2011 WL 1795604, at *5 (Bankr. S.D.N.Y. May 12, 2011) (stating that "[u]nder section 363(f)(2), a lienholder who receives notice of a sale but does not object within the prescribed time period is deemed to

11

consent to the proposed sale, and assets thereafter may be sold free and clear of liens"). Here, not only was Jackman a duly noticed creditor at the time of the Sale Authorization Order and therefore afforded a suitable opportunity to raise the arguments he raises now, but he also actively participated in the sale process by engaging in negotiations with the Trustee and Chase to purchase the Property. Therefore, Jackman was a party to the Sale Authorization Order for *res judicata* purposes.

*(c)    The Sale Authorization Order and the Adversary Proceeding Involve the Same Cause of Action*

The fourth prong of *res judicata* is satisfied because the Sale Authorization Order and the Adversary Proceeding involve the same cause of action. Two proceedings contain the same cause of action where the same transaction, evidence, and factual issues are involved in both cases. *See Corbett v. MacDonald Moving Servs., Inc.*, 124 F.3d 82, 89 (2d Cir. 1997); *see also In re USN Commc'ns, Inc.*, 280 B.R. 573, 586 (Bankr. D. Del. 2002) (explaining that two proceedings address the same cause of action where "the factual underpinnings, theory of the case, and relief sought against the parties to the proceeding are so close to a claim actually litigated in the bankruptcy that it would be unreasonable not to have brought them both at the same time in the bankruptcy forum"). Moreover, proceedings include the same cause of action "if an independent judgment in a separate proceeding would impair or destroy rights or interests established by the judgment entered in the first action." *Sure-Snap Corp. v. State Street Bank and Trust Co.*, 948 F.2d 869, 874 (2d Cir. 1991) (quotations and citation omitted).

Here, the Amended Complaint is based upon the identical arguments and claims that Jackman should have raised in connection with the Sale Authorization Order. In the Amended Complaint, Jackman alleges that he has an equitable interest in the Property. He did not make

12

such allegations in connection with the Sale Authorization Order, which determined the estate's interest in the Property, authorized its sale free and clear of all interests therein other than those of Chase, and thus, implicitly found that no entity other than Chase had an equitable interest in the Property. But Jackman did not object in connection with that order. To the contrary, he attempted to purchase the Property from the Trustee. It was only after his negotiations failed that Jackman filed the Amended Complaint and asserted an equitable interest in the Property. This is nothing more than an attempt by Jackman to end-run the Sale Authorization Order and obtain the Property without offering compensation. Indeed, in Jackman's own words, "[s]ince I was unable to consummate any sale contract with the Trustee, I commenced the instant action seeking a declaration that I owned the Sag Harbor Property by virtue of the imposition of a constructive trust . . . ." *See* Jackman Aff., ¶ 27. As Jackman had the opportunity to effectively litigate his claim during the Sale Motion, "the proper medium for a challenge to the original bankruptcy court's order is through a direct challenge of that order. The collateral attacks brought later are barred by *res judicata*." *Hendrick v. Avent*, 891 F.2d 583, 587 (5th Cir. 1993).

Accordingly, as all four prongs of *res judicata* have been met, the Trustee is entitled to summary judgment as a matter of law.

## II.    THE STRONG-ARM POWERS UNDER THE CODE PROTECT THE TRUSTEE FROM UNRECORDED INTERESTS

As one of the strong-arm powers enunciated in the Bankruptcy Code, a trustee is given the status of a hypothetical bona fide purchaser of real property. *See In re Potter*, 313 F.3d 93, 95 (2d Cir. 2002). The purpose of this status is "to cut off unperfected security interests, secret liens and undisclosed prepetition claims against the debtor's property as of the commencement of the case." *In re Canney*, 284 F.3d 362, 374 (2d Cir. 2002) (quoting COLLIER ON BANKRUPTCY ¶ 544.03 (15th ed. rev. 2001)). Specifically, Section 544(a)(3) provides:

13

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any other creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by . . . a bona fide purchaser of real property . . . from the debtor . . . that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

*See* 11 U.S.C. § 544(a)(3). In evaluating the trustee's rights as a hypothetical bona fide purchaser of real property, the court looks to the substantive state law pertaining to the property that is the subject of the proceeding, in this case the law of New York. *See Mosello v. ALI, Inc. (In re Mosello)*, 190 B.R. 165, 170 (Bankr. S.D.N.Y. 1995).

Under New York law, a bona fide purchaser is protected from any prior, unrecorded interests in the purchased property. *See* N.Y. RPL § 291; *see also Simonds v. Simonds*, 45 N.Y.2d 233, 242 (1978) ("A bona fide purchaser of property upon which a constructive trust would otherwise be imposed takes free of the constructive trust, but a gratuitous donee, however innocent, does not."). To qualify for such status, a purchase must be made in good faith, without notice of any adverse interests in the property, and for valuable consideration. *See* N.Y. RPL § 291.

As a bona fide purchaser must be "without notice" of any adverse interests, a purchaser of real property is held to what may be revealed by an examination of the record and "reasonable inquiry on the basis of all the circumstances." *See Kennedy Inn Assocs. v. Perab Realty Corp. (In re Kennedy Inn Assocs.)*, 221 B.R. 704, 713 (Bankr. S.D.N.Y. 1998). Accordingly, a purchaser is deemed to be aware of any notice in the record. *In re Mosello*, 190 B.R. at 170 ("A bona fide purchaser is one who would have checked the appropriate recording office for real estate transfers and who would not have learned of any impairment in the transferor's title.") (citations and quotations omitted).

In the instant case, the Trustee took title to the Property free of Jackman's purported and unrecorded interest because a bona fide purchaser at the time of the commencement of the case would not have been on record notice of Jackman's interest. Indeed, there was no record notice of Jackman's purported interest in Property because a purchaser would not have learned of any such interests in the Property by searching the real estate records in the Suffolk County Clerk's Office. The Deed, recorded in the Clerk's office, transferred the entirety of the Property to the Debtor and did not include any rights or interests reserved by Jackman. *See* Chase Summary Judgment Statement, Ex. A. Therefore, the Trustee was not on record notice of any adverse interest.

In addition, a purchaser will not be protected from an unrecorded interest if he had constructive or inquiry notice of such interest, which arises when a purchaser has knowledge of facts that would lead a reasonably prudent person to investigate. *See Anderson v. Blood*, 152 N.Y. 285, 293 (1987); *Stoneybrook Realty, LLC v. Cremktco, Inc.*, 675 N.Y.S.2d 749, 751 (App. Term 1998). Under New York law, possession by a third party that is open and notorious and inconsistent with the record title places a purchaser on inquiry notice of the possible existence of the possessor's prior rights. *See Wardell v. Older*, 418 N.Y.S.2d 196, 198 (App. Div. 1979); *see also Tompkins County Trust Co. v. Talandis*, 690 N.Y.S.2d 330, 333 (App. Div. 1999) (noting that purchaser has duty to examine where person in open and notorious possession of the property is inconsistent with the title of the owner of record). However, where a grantor remains in possession of the property granted, a subsequent purchaser is not placed on inquiry notice by the grantor's retained possession because such possession is not inconsistent with the rights of the person to whom he has conveyed. A purchaser is justified in relying on the title conferred by the deed and can assume that the grantor's continued possession is merely permissive, and not in

15

antagonism to the grant. *See Buhecker v. R.B. Petersen & Sons Const. Co.*, 929 P.2d 937, 939 (Nev. 1996) ("[P]ossession of land by a vendor will not impart notice to a purchaser since a party remaining in possession is estopped from impeaching or contradicting his own deed, or denying that he granted the premises which his deed purports to convey."); *Cook v. Travis*, 20 N.Y. 400 (1859) (finding that continued presence of prior owner did not provide inquiry notice because "continued occupancy would naturally lead to an inference that those who had acquired title under the sheriff's sale did not choose to disturb his possession; that he remained on his farm as their tenant or by their indulgence," especially since the records disclosed that all of the prior owner's rights had been divested by the sale). This is even more so where the grantor and grantee remain in shared possession of the property granted. *See Pope v. Allen*, 90 N.Y. 298 (1882) ("In the present case defendant's possession was equivocal and consistent with N. B. Pope's title on the record, since Pope was also in possession and there was nothing to indicate that defendant's possession was not subordinate to his, or suggest hostility to the record-title."); *see also Diamond v. Wasserman*, 185 N.Y.S.2d 411, 413–14 (App. Div. 1959).

Here a purchaser would not have been placed on inquiry notice because Jackman's possession of the Property was not inconsistent with the Deed conveying the entirety of the Property to the Debtor. This is because after the 2004 Sale, the grantor, Jackman, continued to occupy the Property, first, with Aiolova, then individually. Such occupation does not put a purchaser on inquiry notice of Jackman's interests so as to undermine its status as a bona fide purchaser under the above-discussed New York law. As such, the Trustee's status as a bona fide purchaser for value protects her from Jackman's unrecorded interests. *See Turner v. Emmons & Wilson, Inc. (In re Minton Group, Inc.)*, 28 B.R. 774, 788 (Bankr. S.D.N.Y. 1983) ("Even if the defendants were able to establish that under Connecticut law they held recognizable equitable

16

interests, either by virtue of a resulting or a constructive trust, the trustee, nevertheless, possesses superior rights under Code § 544(a)(3) as a hypothetical bona fide purchaser of real property from the debtor . . . .").

Accordingly, as the Trustee was a bona fide purchaser of the Property under Section 544(a)(3), she is entitled to summary judgment as a matter of law.

### III.    SANCTIONS

In their replies to Jackman's Opposition, the Trustee and Chase, for the first time, request the imposition of sanctions against Jackman, pointing out that the record is replete with inconsistencies, issues of credibility, and there have been numerous delays in the implementation of the Sale Authorization Order.[5]  *See* Trustee Reply, ¶¶ 11–13; Chase Reply, ¶¶ 23–27. However, "[d]ue process requires that courts provide notice and opportunity to be heard before imposing any kind of sanctions." *See Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999) (quotations and citations omitted); *see also In re Truong*, No. 07-12194, 2008 WL 1776227, at *6 (Bankr. S.D.N.Y. Apr. 14, 2008) ("When a court intends to impose sanctions, the target of those sanctions is entitled to notice of the behavior the court finds actionable and the specific authority under which the court intends to impose the sanctions."). As such, the request for sanctions is DENIED without prejudice to be renewed upon appropriate motion.

---

[5] Indeed, at argument, counsel for Jackman acknowledged the superior legal and economic position of Chase, and, nevertheless, failed to articulate what economic benefit would inure to his client should he obtain ownership of the Property, other than speculating that unnamed government programs may be beneficial to such owner.

17

## **CONCLUSION**

In light of the foregoing, the Trustee's Motion for summary judgment is GRANTED, and the Amended Complaint is DISMISSED in its entirety with prejudice. In addition, the request of the Trustee and Chase for the imposition of sanctions against Jackman is DENIED without prejudice to be renewed by appropriate motion.

**IT IS SO ORDERED.**

Dated: New York, New York
       August 1, 2013

                                            /s/ Burton R. Lifland
                                            United States Bankruptcy Judge